```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
LEON ZACHAROWICZ,                                          MEMORANDUM
                    Plaintiff,                             & ORDER


                                                           02CV4510(SLT)(MLO)
           -against-


NASSAU HEALTH CARE
CORPORATION, et al.,

                    Defendants.
--------------------------------------------------X
TOWNES, U.S.D.J.
```

Plaintiff Leon Zacharowicz ("Plaintiff" or "Zacharowicz") brings this action pursuant to Title VII of the Civil Rights Act of 1968 ("Title VII") and New York State Human Rights Law for the alleged discrimination and retaliation he suffered as an employee of defendants Nassau Health Care Corporation ("Defendant NHCC" or "NHCC") and Nassau University Medical Center ("Defendant NUMC" or "Hospital"). Defendants move for summary judgment dismissing the complaint. Based upon all submissions of the parties and oral argument held on June 3, 2005, and for the reasons stated below, Defendants' motion is granted in full.

I.  *Facts and Procedural History*[1]

Plaintiff is an Orthodox Jew. (Zacharowicz Decl. ¶ 3.) He was employed by the Hospital from June 16, 1997 until June 15, 2001, though from September 29, 1999 until his termination, he was employed by defendant NHCC, pursuant to NHCC's acquisition of title to the Hospital. (Def. 56.1 Stat. ¶¶ 2-7, 77.) Plaintiff applied for a position as a pediatric neurologist with the Hospital in 1996 and attended at least two interviews in which he met with other physicians in the Hospital's Department of Neurology, Doctors Berkowitz and Delfiner. (Zacharowicz Decl. ¶¶ 14-15.) Plaintiff claims that at each interview, he explained that, as an Orthodox Jew, he would be unable to work or be on call on the Jewish Sabbath (lasting approximately from sundown on Fridays until sundown on Saturdays) and various Jewish holidays throughout the year. (Zacharowicz Decl. ¶ 16.) At the time, the Hospital had only one other full-time pediatric neurologist, Dr. Satish Kadakia. (Def. 56.1 Stat. ¶ 21; Pla. 56.1 Stat. ¶ 21; Shabbir Aff. ¶¶ 2-3.) As a result, Plaintiff was told he would not be able to avoid being on call or on duty on for every Sabbath. (Def. 56.1 Stat. ¶ 22.) However, Plaintiff also claims that he was promised to have all Jewish holidays off, and that the Hospital would try to reduce the number of Sabbaths Plaintiff

---

[1] In all motions for summary judgment before this Court, the non-moving party is required to submit a statement (the "56.1 Statement") setting forth the material facts it believes are in dispute, including a "***correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing*** a separate, short, concise statement of additional material facts as to which it is contented there is a genuine issue to be tried." Local Rule 56.1 (emphasis in original). Plaintiff's statement does not include a correspondingly numbered paragraph for each paragraph in Defendant's statement and at the June 3, 2005 oral argument of this motion, Plaintiff's counsel incorrectly asserted that Rule 56.1 required him only to respond to those paragraphs containing facts Plaintiff does not admit. In any event, Plaintiff's counsel stated that he does not contest the facts contained in any paragraph of Defendant's 56.1 Statement that Plaintiff's 56.1 Statement ignores and those facts will be deemed admitted.

would be asked to work by, *e.g.*, hiring another pediatric neurologist. (Zacharowicz Decl. ¶ 16; Pla. 56.1 Stat. ¶¶ 22-23.)

*Jewish Law*

According to Plaintiff, avoidance of "melacha," or work, as defined by Jewish law, is a significant component to the observation of Jewish Holidays:

> [T]here are many activities that most people probably would not characterize as "work," which are "melacha" as a matter of Jewish law. For example, talking on a telephone, writing, or driving a car....[are] "melacha." Because of the prohibition of "melacha," I do not engage in routine medical practice on the Sabbath.
>
> [...]
>
> [I]n the event of a threat to human life, not only is the prohibition of "melacha" suspended, but Jewish law imposes an obligation to take any and all steps necessary to save the life."
>
> Jewish law similarly *prohibits* "melacha"...on thirteen Jewish holidays during the year: the two days of Rosh Hashana; the one day of Yom Kippur; the first two of the seven days of Sukkos; Shemini Atzeres (which immediately follows the seventh day of Sukkos); Simchas Torah (which immediately follows Shemini Altzeres); the first two and the last two days of the eight days of Passover; and the two days of Shavuos [hereinafter the "Major Holidays"]..
>
> [...]
>
> Jewish law also provides that one *should not* engage in one's usual occupation on nine other days: the last five days of Sukkos; the four intermediate days of Passover; Purim, which is a one-day holiday about a month before Passover; and Tisha B'Av, a one-day (about 25 hours fast day that falls in late July or August [hereinafter the "Minor Holidays"].
>
> Jewish law also orders us to eat only kosher food.

(Zacharowicz Decl. ¶¶ 7-13) (emphases added).

3

The Jewish Sabbath commences at sundown every Friday and lasts until nightfall on Saturday, approximately 25 hours later. (Zacharowicz Decl. ¶ 4.) In fact, each of the holidays listed begin at sundown and end on a subsequent sundown. (*Id.* at ¶ 10.) Seven of the nine holidays fall in September and October. (*Id.*) Passover falls in March or April and Shavuous follows Passover in May or June. (*Id.*)

Defendant has argued that the distinction between the Major and Minor Holidays is key in this case, as Plaintiff admits that he was never forced to work on holidays when work was prohibited but did work on one Minor Holiday, Purim of 2000, when, according to Jewish law, he should not have worked. (Pla. 56.1 Stat. ¶¶ 24-28.) Therefore, Plaintiff essentially complains of having to work on Purim 2000 and of being repeatedly *scheduled* to work or be on call during Sabbaths and other holidays on which he did not actually work. (Zacharowicz Decl. ¶¶ 26-52; Zuckerman Letter to Court 6/10/05).

Plaintiff also claims that being repeatedly scheduled to work or be on call during Sabbaths and holidays constitutes harassment. Dr. Kadakia, Plaintiff alleges, became frustrated with Plaintiff's refusal to be on duty or on call during Sabbaths and holidays and continued to schedule Plaintiff on days Dr. Kadakia knew Plaintiff could not work, in addition to denying Plaintiff vacation time requested for non-religious purposes. (*Id.*) According to Plaintiff, Kadakia also denied Plaintiff's request to leave work when Plaintiff learned his daughter was suffering from an asthma attack. (*Id.* at ¶ 62.) Plaintiff alleges Dr. Kadakia instructed him to see another patient before he departed and directed a resident pediatric neurologist not to respond to the "stat" request. (*Id.* at 64.) Plaintiff accuses Doctors Delfiner and Kadakia of engaging in a campaign to harass him.

4

*Plaintiff's Termination*

The evidence of the Hospitals financial condition upon Plaintiff's termination is largely undisputed. The Hospital was in a significant financial crisis during 2000 and 2001. (Def. 56.1 Stat. ¶ 56.) NHCC hired Cap Gemini Ernst & Young ("Cap Gemini") to evaluate the operations and recommend methods for increasing productivity. (Def. 56.1 Stat. ¶ 60.) As a result of the Cap Gemini consultation, Defendants were instructed to reduce the number of physicians at the Hospital. (Def. 56.1 Stat. ¶¶ 63-4.) Dr. Delfiner alleges he was ordered to reduce his neurology staff by one physician. Based on a series of negative evaluations of Plaintiff (from hospital physicians and staff), the small size of the department, Dr. Kadakia's seniority and the discord between Plaintiff and Dr. Kadakia, Dr. Delfina chose to terminate Plaintiff on June 15, 2001. (Ventry Aff. Exs. JJ-OO.)

Plaintiff argues this termination was in retaliation for his complaints about being scheduled on Sabbaths and holidays. Defendants move for summary judgment, alleging Plaintiff has failed to state a prima facie case of discrimination or retaliation, in that he was never forced to work on any holiday on which he was prohibited from working, and because he was ultimately terminated due to the financial crisis of the Hospital.

II. *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)). To be "genuine," an

5

issue of fact must be supported by evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Holtz*, 258 F.3d at 62. Because the moving party bears the burden of showing that there are no genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "a court must resolve all ambiguities and draw all reasonable inferences against [it]." *Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, *4 (S.D.N.Y. 2003) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

"[D]iscrimination claims are subject to the well-known burden-shifting analysis set forth in *McDonnell Douglas*."[2] *Murphy v. Bd. of Ed. of the Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 301 (W.D.N.Y. 2003). Under *McDonnell*, if plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer. *Id.* If the employer can show "a legitimate, clear, specific and non-discriminatory reason" for the adverse action," the plaintiff assumes a new burden, that of showing that the employer's proffered reasons are a pretext and that "more likely than not employees membership in a protected class was the real reason for the adverse action."

A. *Religious Discrimination*

"To make out a prima facie case of religious discrimination, [Plaintiff] must show (1) that [he] holds a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement." *Knight v. Connecticut Department of Public Health*, 275 F.3d 156, 167 (2d Cir. 2001). At the outset, we note that it makes no difference (for

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

Title VII purposes) whether Plaintiff's religion prohibited him from work on the days in question or if he merely "should not" have worked. "Title VII defines religion broadly to include all aspects of religious observance and practice, as well as belief...As such, Title VII protects more than the observance of Sabbath or practices specifically mandated by an employee's religion." *Reyes v. New York State Office of Children and Family Services*, 2003 WL 21709407, at *6 (S.D.N.Y. Jul. 22, 2003) (*quoting* 42 U.S.C. 2000e(j)). "[I]t is only appropriate for a court to engage in an analysis of the sincerity of a plaintiff's religious beliefs, and not the verity of those beliefs. Therefore, [plaintiff's commitments] could only be considered outside the scope of Title VII if they were found to be personal preferences that are wrapped in religious garb," a claim that Defendants do not make here. *Id.* For these reasons, the Court makes no distinction between the Major and Minor Jewish Holidays for the purpose of this motion.

*Plaintiff's Allegations*

Plaintiff's Memorandum of Law, despite being 19 pages longer than this Court's limit, contains little support in the way of case law, consists of conclusory allegations and asks the Court to make inferences rather than weigh the evidence presented. For example, Plaintiff states:

> There is no dispute that Dr. Zacharowicz holds a bona fide religious belief that he should not work on the Jewish Sabbath or on the holiday of Purim. There is also no dispute that he informed the Hospital of this belief. And there can be no dispute that had he refused to work on the Jewish Sabbath or Purim, the Hospital would have disciplined him.

(Pla. Mem. of Law at 37.) The Court cannot infer that the Hospital *would have* disciplined him, particularly in the face of evidence that, on several occasions, Plaintiff refused to work when

7

scheduled and was not disciplined. (*See*, *e.g.*, Zacharowicz Decl. ¶¶ 26, 51.) Plaintiff cites only a footnote in a Ninth Circuit case in support of his argument that "the threat of discharge (or other adverse employment practices) is a sufficient penalty" but does not even allege the threat of discharge or any adverse employment action in sufficient detail.[3] *Equal Employment Opportunity Comm'n v. Townley Engineering and Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988).

Additionally, "[p]laintiff was never disciplined for failing to comply with the requirement that he work on Saturdays [or any Jewish holidays], a fact that is fatal to his religious discrimination claim." *Thompson v. Kaufman Bakery, Inc.*, 2005 WL 643433, *8 (W.D.N.Y. Mar. 16, 2005). It is also noteworthy that he accepted the position with the Hospital knowing there was only one other pediatric neurologist in the department with whom all coverage had to be negotiated. *See*, *e.g.*, *Cosme v. Henderson*, 287 F.3d 152, 161 (2d Cir. 2002) (affirming judgment in favor of defendant where, *inter alia*, plaintiff applied for position after warning that he would be required to work on Saturdays). Having accepted the position with this knowledge, then electing to observe all but one Jewish holiday during his tenure, and receiving no discipline for so choosing, Plaintiff's claim of religious discrimination must fail.

---

[3] For example, Plaintiff does allege that Dr. Delfiner told him that "if [Plaintiff] did not work out" a dispute wherein Plaintiff refused to be on call during a Sabbath, either Plaintiff or Kadakia "would have to leave the Hospital." (Zacharowicz Decl. ¶ 30.) However, when Plaintiff responded that he would cover the weekend if he had to, Delfiner told Kadakia that "it would not be 'wise'" to have Plaintiff on call and ultimately Plaintiff did not work. Given Delfiner's concession to Plaintiff's request, this incident cannot be classified as a threat of discharge. Furthermore, should Plaintiff argue that he experienced adverse employment actions because he could not get time off for secular events, such as vacations and conferences, Defendants' failure to grant Plaintiff leave under these circumstances does not violate Title VII. *See  Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

*Purim 2000*

Plaintiff alleges that he was forced to work on Purim 2000. If true, this allegation does not affect the deficiencies in Plaintiff's claim of religious discrimination for two reasons: a prima facie showing of religious discrimination requires showing that one was disciplined for *failure* to comply with an employment requirement. By working on Purim, Plaintiff did not fail to comply with the requirement that he report.

In *Thompson*, a graveyard shift employee of defendant bakery was switched to the day shift, requiring him to work on Saturdays, one of two days of the week that certain maintenance could be performed. The plaintiff continued to work on Saturdays and did not suffer any loss in pay or disciplinary action. *Id.* at *2. The court found that the absence of an adverse employment action precluded recovery. *Id.* at *8. Like the *Thompson* plaintiff, Zacharowicz cannot argue that he was disciplined for failure to do something that he did not fail to do:

> by agreeing to work on [his] Sabbath, whether willingly or reluctantly, Plaintiff avoided suffering any adverse *employment* consequences as a result of [his] religious beliefs; rather, [his] personal religious observance suffered on account of [his] adherence to [his] work schedule. Yet Title VII protects only the former, employment-related interests from abridgment.

*Id.* (emphasis in original).

Furthermore, Title VII "precludes recovery for discrete acts of discrimination or retaliation that occurred outside the [300-day] statutory time period" preceding the filing of a charge with the Equal Employment Opportunity Commission ("EEOC"). *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("*Morgan*"). Defendants allege that all relevant events occurring prior to August 19, 2000 are untimely, as Plaintiff's complaint to the EEOC was filed on June 15, 2001. (Ventry Aff. Ex. TT.) "Each discrete discriminatory act starts

9

a new clock for filing charges alleging that act" and any claims of discrimination alleged to have been committed prior to August 19, 2000 have expired. *Id.* at 113. In 2000, Purim fell on March 21. Therefore, it is outside the limitations period for the purposes of Plaintiff's religious discrimination claim.

II.     *Hostile Work Environment*

However, pursuant to the holding in *Morgan*, the court may consider acts outside of the 300-day limit for the purpose of evaluating hostile work environment claims: "Hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct....The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115; *see also Domb v. Metropolitan Life Ins. Co.*, 2003 WL 21878784, *8 (S.D.N.Y. 2003) ("the fact that [plaintiff's] subjective experience in 1997 had not yet sunk to the level of a hostile environment does not mean that the pattern of conduct did not contribute to the creation of such an environment later"). Even including consideration of otherwise time-barred allegations, Plaintiff fails to allege a prima facie case of hostile work environment.

To defeat summary judgment on his hostile work environment claim, Plaintiff must show that the conduct he experienced was "severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive." *Domb*, 2003 WL 21878784, at *6. "A court must consider the totality of the circumstances in determining whether a workplace is hostile or abusive," *Lucas v. South*

10

*Nassau Comm. Hosp.*, 1998 U.S. Dist. LEXIS 6504, at *11 (E.D.N.Y. 1998); *see also Harris v. Forklift Systems*, 510 U.S. 17 (1993). In *Harris*, the Supreme Court articulated a non-exclusive list of factors to be taken into account when evaluating claims of hostile work environment. They include: frequency of the discriminatory conduct, severity, whether the conduct was physically threatening or humiliating (versus a "mere offensive utterance"), whether the conduct unreasonably interfered with plaintiff's work and whether psychological harm resulted from the conduct. *Id.* at 23.

Considering the allegations made by Plaintiff, in totality, including those that are time-barred for the purposes of his other discrimination claims, Plaintiff's claim of hostile work environment cannot withstand defendant's motion for summary judgment. His allegations are as follows: during his interview, Dr. Delfiner inquired as to whether Plaintiff was an Orthodox or Conservative Jew, which Plaintiff found "odd." (Zacharowicz Dec. ¶ 18.) Dr. Delfiner would also inform Plaintiff of stories or articles criticizing the Orthodox community, such as when Dr. Delfiner complained that a Conservative Rabbi was not greeted by some Orthodox Jews in his community. (*Id.* at ¶ 25.) Dr. Kadakia continued to schedule Plaintiff to work or be on call during the Sabbath or Jewish holidays. (*Id.* at ¶ 32.) Definer made "comments" about the number of children Plaintiff planned to have and "comments....to the effect that the Department needed to avoid hiring any more Orthodox Jewish doctors." (*Id.* at ¶ 48.)

The allegations of harassment Plaintiff claims to have suffered at the hands of Dr. Kadakia are completely unfounded. For example, Plaintiff claims that, in making the proposed on call schedule for 2000, Dr. Kadakia "was threatening not to accommodate Dr. Zacharowicz

11

with respect to some of the Jewish holidays in October." (Pla. Mem. of Law at 18.) However, the cover memorandum to the schedule reads:

> Attached is the *tentative* pediatric neurology service/on call schedule for year 2000...All vacation and other needs will be covered with mutual agreement so that by year end, coverage for service is equalized. I am aware of your need for religious days coverage. *Since you know the calendar in advance, provide me with the days when you will be required to be off and coverage will be arranged with understanding of overall balance.* So far, of the list of submitted Jewish holidays for the year 2000 and vacation are accommodated for the months of April and June. I will provide coverage for that period. I am planning for vacation in the month of August 2000, when I would like you to balance coverage which I will provide to you in April. I am aware of your needs in the month of October and appropriate adjustments will be made.

(Ventry Aff. Ex. H) (emphases added). Nowhere in this language is there a threat or a denial of Plaintiff's right to observe those Jewish holidays. Moreover, Plaintiff's argument that his secular August 2000 conference should have been prioritized over Kadakia's vacation plans is without merit. "Title VII only requires that the employer propose a reasonable accommodation and does not require that the employer offer the specific accommodation the employee seeks." <u>Durant v. NYNEX</u>, 101 F. Supp. 2d 227 (S.D.N.Y. 2000).

The remaining allegations are not only vague but insufficient to establish a hostile work environment. *Compare* <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir. 2000) ("Isolated instances of harassment ordinarily do not rise to [an actionable level.]"); <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 713 (2d Cir. 1998) (affirming dismissal of hostile environment claim where plaintiff alleged that one supervisor made occasional racist comments, only one of which was directed at plaintiff); <u>Bennett v. Cinemark U.S.A., Inc.</u>, 295 F. Supp. 2d 243, 248 (W.D.N.Y. 2003) (dismissing plaintiff's complaint where co-worker used frequent foul language and made obscene comments about other employees without directing any comments at plaintiff in her

presence); <u>Shabat v. Blue Cross Blue Shield of Rochester</u>, 925 F. Supp. 977, 982 (W.D.N.Y. 1996) (granting summary judgment where comments that "people from the Mideast beat their wives," "Israelis are blunt, direct, candid and honest people and that Americans cannot handle [that] brand of honesty," and that Yom Kippur is not a holiday insufficient evidence of discriminatory animus); *and* <u>Kaplan v. Banque Nacionale de Paris</u>, 1995 WL 753900, at *4 (S.D.N.Y. Dec. 19, 1995); (dismissing hostile work environment claim where supervisor commented that plaintiff didn't need to celebrate "Hebe holidays," told Plaintiff he didn't need time off during the Christmas season, said plaintiff could not be very religious because he had an Italian wife and once told plaintiff "Don't be so Jewish about it.") *with* <u>Domb</u>, 2003 WL 21878784 at *1 (summary judgment not appropriate where "Dunn would regularly introduce her to new recruits as 'The Spanish Jew who is the pain in the ass troublemaker'...[C]ommented to her "you think you are a smart Hebe" and "A few or ten times, Dunn told her she was 'over the hill'"); *and* <u>Thompson v. New York City Dep't of Probation</u>, 2003 WL 22953165, *3 (S.D.N.Y. Dec. 12, 2003) (denying defendant motion to dismiss when disabled plaintiff was called "gay," "jap," "tramp" and when co-workers stole items bought by defendant to accommodate plaintiff's disability).

III. *Retaliation*

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [such employee] has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

13

title." 42 U.S.C. § 2000e-3(a) (citations omitted). Title VII is violated when "a retaliatory motive plays a part in adverse employment actions towards an employee, whether or not it was the sole cause." *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (*quoting Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)) (internal quotation marks omitted). The burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for discrimination claims applies as well to retaliation claims brought under this statute. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). In the context of a motion for summary judgment, a plaintiff must first demonstrate a prima facie case for retaliation by showing that he "engaged in protected activity, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir. 1994) (*quoting Sumner v. United States Postal Service*, 899 F.2d 203, 208-209 (2d Cir. 1990)). A plaintiff's burden in making out a prima facie case is "de minimis." *Richardson v. N.Y. State Dept. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir. 1999) *(quoting Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)).

Once a plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Treglia*, 313 F.3d at 721 (*quoting Cifra v. General Electric*, 252 F.3d 205, 216 (2d Cir. 2001)).

Even if this Court were to find that Plaintiff stated a prima facie case of retaliation, this claim must still fail. Defendants have articulated non-retaliatory reasons for Plaintiff's termination, to wit, the undisputed financial crisis with which Defendants were faced in 2000-2001, along with ample evidence of complaints made against Plaintiff by staff, patients and residents. (Ventry Aff. Exs. JJ-OO.) Plaintiff fails to make a respectable attempt to contradict any of this evidence. Instead he makes unsupported statements that "it is reasonable to infer" that he was terminated on account of his religion and that it is "reasonable to infer" that the negative evaluations in the record were "just another aspect of Dr. Delfiner's insidious, retaliatory campaign." (Pla. Mem. of Law at 42; Pla. 56.1 Stat. ¶¶ 38-47.) Because Plaintiff has offered no evidence that Defendant's stated reasons for his termination are a pretext for retaliation, this claim must be dismissed.

## IV. *Conclusion*

Plaintiff's complaint should be dismissed in its entirety. Plaintiff fails to make a prima facie showing of religious discrimination, as he alleges no adverse employment action in response to his refusal to work on Sabbaths and Jewish Holidays. Additionally, Plaintiff cannot recover for the one holiday on which he alleges he was forced to work. Not only was this holiday outside of the 300-day limitations period, but it does not qualify under Title VII, which deals with the repercussions an employee may face after refusing to meet the employment requirement in conflict with their religion. Plaintiff's claim of hostile work environment is unsupported by the record, which contains allegations not numerous or of a nature pernicious enough to qualify for recovery under the law. Finally, Plaintiff's failure to present any evidence that Defendants' non-retaliatory reason for his termination was pretextual requires dismissal of his retaliation claim.

**SO ORDERED.**

_____S/_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:   June 29, 2005
         Brooklyn, NY